## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M.L.-S.F.,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIMBERLY S. BUDD et al.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 21-cv-10078-DJC

## MEMORANDUM AND ORDER

**Casper, J.**                                                          **August 30, 2021**

**I.    Introduction**

Plaintiff M.L.-S.F. ("Plaintiff") has sued Kimberly S. Budd ("Budd"), Chief Justice of the Massachusetts Supreme Judicial Court ("SJC"), Mark V. Green ("Green"), Chief Justice of the Massachusetts Appeals Court, John D. Casey ("Casey"), Chief Justice of the Probate and Family Court Department, Brian J. Dunn ("Dunn"), First Judge of the Suffolk Probate and Family Court, Paula M. Carey ("Carey"), Chief Justice of the Trial Court, Jonathan S. Williams ("Williams"), Court Administrator of the Trial Court (collectively, "Court Defendants"), Rodney S. Dowell ("Dowell"), Bar Counsel of the Massachusetts Board of Bar Overseers ("BBO"), and Robert M. Daniszewski ("Daniszewski"), Assistant Bar Counsel of the BBO (collectively, "BBO Defendants"), all in their official capacities (collectively, "State Defendants").  D. 1.  Plaintiff has also sued her ex-husband J.S.F. and two private attorneys, Douglas M. Surprenant

("Surprenant") and Denzil D. McKenzie ("McKenzie").  Id.   Plaintiff brings claims under the Fourteenth Amendment (Counts I–VI) and 42 U.S.C. § 1983 (Count VII) arising out of her 2015 divorce and BBO disciplinary proceedings brought against her for her conduct during those proceedings.  Id.  Plaintiff also seeks a temporary restraining order and preliminary injunction to halt the ongoing BBO disciplinary proceedings and enjoin the Court Defendants from taking any action related to Plaintiffs' residence, which Plaintiff was ordered to sell as a condition of her divorce.  D. 64.  All Defendants now move to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, D. 31, 33, 37, 51, and the State Defendants oppose Plaintiff's motion for injunctive relief, D. 64.   For the reasons discussed below, Defendants' motions to dismiss are ALLOWED and Plaintiff's motion for injunctive relief is DENIED.

## II.    Standard of Review

### A.    Motion to Dismiss

#### 1.    *Subject Matter Jurisdiction*

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction.  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."  Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

> 2.     *Failure to State a Claim*

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. If they do not, then dismissal is warranted. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## B.     Injunctive Relief

A preliminary injunction "is an 'extraordinary and drastic remedy.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). To obtain such relief, the Court must consider: (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Likelihood of success on the merits is the "main bearing wall of this framework." W Holding Co. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014) (internal quotation marks omitted) (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). Irreparable harm, on the other hand, is measured "on a sliding scale, working in conjunction with a moving

party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." Braintree Labs., Inc. v. Citigroup Global Mkts., Inc., 622 F.3d 36, 42-43 (1st Cir. 2010)).  The plaintiff "bears the burden of establishing that these four factors weigh in [her] favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

## III.    Factual Background

Unless otherwise noted, the following facts are drawn from Plaintiff's complaint, D. 1, and documents referenced therein, and the well-pled facts are taken as true for the purposes of resolving the motions to dismiss.

In May 2014, Plaintiff sued J.S.F. for divorce in Suffolk Probate and Family Court ("Probate Court").  D. 1 ¶¶ 1, 19.  The Probate Court held a trial on November 5 and 6, 2015 and issued a judgment of divorce on December 30, 2015.  Id. ¶¶ 2, 22.  The judgment of the Family Court required Plaintiff, among other things, to sell the marital residence and divide the proceeds with her ex-husband.  D. 1-13 at 1.

Prior to the trial, the Family Court appointed a Special Master to oversee discovery.  Id. ¶ 79.  The Special Master reported that Plaintiff failed to cooperate with discovery and the Family Court found Plaintiff in contempt of court.  D. 1-13 at 13.  As a result, the Probate Court ordered Plaintiff to pay the entire Special Master fee, but Plaintiff failed to pay anything and failed to appear at a scheduled hearing regarding the Special Master fee.  D. 1-13 at 22.  Accordingly, Plaintiff was found in contempt of court regarding the fee.  Id.

Plaintiff alleges that the divorce judgment of the Family Court relied upon an incomplete record, which she attempted to supplement after the judgment was issued.  D. 1 ¶¶ 21, 24.  Specifically, Plaintiff alleges that the judgment erroneously calculated Plaintiff and J.S.F.'s

respective financial positions based on bank statements and other financial documents introduced at trial that either should not have been introduced or were not accurate.  See id. ¶¶ 53–75.  The Appeals Court affirmed the divorce judgment on June 19, 2017 and the Supreme Judicial Court denied further review.  See M.L.-S.F. v. J.S.F., 91 Mass. App. Ct. 1128, 2017 WL 2625473 (Mass. Ct. 2017), rev. denied, 477 Mass. 1113 (2017).  Plaintiff filed a motion for relief from judgment on February 12, 2018, which the Probate Court denied on February 21, 2018.  Id. ¶ 77.  The Appeals Court affirmed that denial and the Supreme Judicial Court denied Plaintiff's application for further review.  Id.; see M.L.-S.F. v. J.S.F., 95 Mass. App. Ct. 1118, 2019 WL 2575003, rev. denied, 483 Mass. 1102 (2019).

Meanwhile, Plaintiff never listed or sold the marital residence.  See D. 1 ¶¶ 103–04; D. 1-33 at 5.  In December 2017, J.S.F. moved the Probate Court to enforce the divorce judgment requiring Plaintiff to sell the residence.  D. 1 ¶ 106; D. 1-44 at 2.  The Probate Court found Plaintiff in contempt of court for not doing so in violation of the divorce judgment.  D. 1-33 at 4.  The Probate Court then appointed McKenzie as partition commissioner to sell the marital residence at private sale or public auction.  D. 1 ¶ 108; D. 1-10 at 4; D. 1-33 at 5.  On March 5, 2020, McKenzie sent Plaintiff a notice to quit and vacate the residence.  D. 1-33 at 2.

As Plaintiff is an attorney, the Probate Court referred the contempt findings to the BBO. See D. 1-33 at 5.  The BBO held a disciplinary hearing on these matters from March 23 to March 25, 2021.  D. 1-41 at 8.

## IV.    Procedural History

Plaintiff initiated this lawsuit on January 19, 2021 and moved for a preliminary injunction.  D. 1, 5.  On March 17, 2021, Plaintiff moved for a temporary restraining order.  D. 26.  The Court denied both motions.  D. 36.  Defendants have now moved to dismiss Plaintiff's

complaint.  D. 31, 33, 37, 51.  Plaintiff then renewed her motion for injunctive relief.  D. 64.
The Court heard the parties on the pending motions and took these matters under advisement.  D.
69.

## V.    Discussion

### A.    <u>Failure to State Claim Against Private Individuals</u>

As a preliminary matter, all counts brought against Surprenant and J.S.F. must be
dismissed.  Plaintiff brings seven counts under the Fourteenth Amendment and § 1983.  <u>See</u> D. 1
at 37–62.  Surprenant and J.S.F. are private individuals who may not be sued for constitutional
violations unless their "conduct can be deemed 'fairly attributable to the State.'"  <u>Meuse v. Pane</u>,
322 F. Supp. 2d 36, 38 (D. Mass. 2004) (quoting <u>Destek Group, Inc. v. State of N.H. Pub. Utils.
Comm'n</u>, 318 F.3d 32, 39 (1st Cir. 2003)).  Here, the complaint contains no allegations that
either Suprenant or J.S.F. were acting under color of state law or in any manner attributable to
the state.

Accordingly, Defendants Surprenant and J.S.F.'s motion to dismiss is ALLOWED.  D.
37.[1]

### B.    <u>The Court Lacks Subject Matter Jurisdiction</u>

#### 1.    <u>*Rooker*-*Feldman*</u>

Pursuant to the <u>Rooker</u>–<u>Feldman</u> doctrine, "federal district courts lack jurisdiction over
'federal complaints . . . [that] essentially invite[ ] federal courts of first instance to review and
reverse unfavorable state-court judgments.'"  <u>Federación de Maestros de P.R. v. Junta de
Relaciones del Trabajo de P.R.</u>, 410 F.3d 17, 20 (1st Cir. 2005) (alteration in original) (quoting
<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283 (2005)).  Here, Plaintiff seeks

---

[1] Surprenant and J.S.F. have purported to include a "counterclaim" for attorney's fees in their
motion to dismiss.  <u>See</u> D. 37 at 4; D. 70.  A counterclaim, however, must be filed with a
responsive pleading, not a motion to dismiss, <u>see</u> Fed. R. Civ. P. Rule 13, so such is denied.

injunctive relief implicating the outcome of proceedings in courts of the Commonwealth. Plaintiff complains that the judgments in question—including the Probate Court's entry of a divorce judgment, the Appeals Court's affirmance of same, the SJC's denial of further review, the Family Court's denial of her Rule 60 motion, the Appeals Court's affirmance of same, and the SJC's denial of further review—resulted in a deprivation of Plaintiff's Fourteenth Amendment rights.   Because any decision in Plaintiff's favor necessarily would require this Court to undermine state court judgments, the Court lacks subject matter jurisdiction over her claims.  See Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (stating that the Rooker–Feldman doctrine, "in broad terms, deprives the district court of subject matter jurisdiction over a final judgment of a state court"); Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (noting that the doctrine "bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court") (quoting Exxon, 544 U.S. at 291).

To the extent Plaintiff argues that "she is not seeking a reversal of the state-court judgment, but rather presenting an independent" challenge to the constitutionality of her state proceedings, such argument also fails.  See Tyler v. Supreme Jud. Ct. of Massachusetts, 914 F.3d 47, 51–52 (1st Cir. 2019); D. 62-1 at 28.  The essence of Plaintiff's claim is that the divorce judgment and denial of the Rule 60 motion (and the appellate decisions affirming it) overlooked or omitted key documents in the factual record.  Plaintiff now asks this Court to "set aside" the divorce judgment and "vacate all of the findings, judgments, and orders [from state court] against Plaintiff."  D. 1 at 60.  These arguments have been considered and rejected in final judgments from the state courts.  See Pellegrini v. Ne. Univ., 323 F. Supp. 3d 182, 186 (D. Mass. 2018), aff'd, 2019 WL 10632972 (1st Cir. June 3, 2019) (noting in Rooker-Feldman analysis that denial

of further appellate review by the Supreme Judicial Court constitutes final judgment).  Thus, her request for relief is "entirely predicated on her insistence that the [state courts] erred in the adjudication of her case," and Rooker-Feldman bars the Court from granting such relief.  See Tyler, 914 F.3d at 52; Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 34 (1st Cir. 2004).

### 2. *Younger Abstention*

Younger requires that federal courts not interfere in certain ongoing state proceedings. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72–73 (2013).  Here, Younger requires this Court to abstain from Plaintiff's requested relief, enjoining the BBO disciplinary proceeding and enjoining the state courts from enforcing the divorce judgment that Plaintiff sell the marital residence.  See D. 1 at 60.  The Court's conclusion follows from a three-step analysis.  See Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192–93 (1st Cir. 2015).

First, both proceedings have been explicitly recognized as those to which Younger abstention applies.  See Sprint Commc'ns, Inc., 571 U.S. at 79 (citing Middlesex Cty. Ethics Comm., 457 U.S. 423, 433–34 (1982) (applying Younger to state-initiated disciplinary proceedings against lawyer for violation of state rules of professional conduct)); New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989) (noting that Younger extends to civil proceedings, like a civil contempt order for non-compliance with a judgment, "uniquely in furtherance of the state courts' ability to perform their judicial functions").

Second, both proceedings are judicial in nature, implicate important state interests, and provide an adequate opportunity for the plaintiff to raise federal constitutional challenges.  See Sirva Relocation, LLC, 794 F.3d at 192–93.

With respect to the BBO proceeding, it is judicial in nature since the attorney discipline process contains the hallmarks of a court proceeding (i.e., investigation, hearing, findings of fact), over which the SJC delegated its judicial authority to the BBO.  See Middlesex Cty. Ethics Comm., 457 U.S. at 433 (reasoning that delegation of statutory duty to attorney discipline commission rendered those proceedings judicial in nature as commission was "arm of the court"); Johnson v. Bd. of Bar Overseers of Mass., 324 F. Supp. 2d 276, 282–83 (D. Mass. 2004) (concluding that investigation and hearing procedures of bar disciplinary board were judicial in nature).  Moreover, Massachusetts has an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."  See Middlesex Cty. Ethics Comm., 457 U.S. at 434.  Finally, Plaintiff has an adequate opportunity to raise federal constitutional challenges, given that BBO rules provide for SJC review of its recommendation and that Massachusetts law "expressly guarantees to any aggrieved party the right of judicial review of administrative decisions" for constitutional errors.  See Johnson, 324 F. Supp. 2d at 283–84; Bettencourt v. Bd. of Registration In Med. of Com. of Mass., 904 F.2d 772, 778 (1st Cir. 1990) (explaining that Massachusetts law provides for judicial review "for constitutional error" of decisions by a state licensing board).

As to the ongoing Probate Court proceeding to enforce the divorce judgment, which is by definition judicial in nature, the effort of the Probate Court to effectuate sale of the residence through contempt orders and appointment of a partition commissioner is "surely an important interest" as it enables the Commonwealth to "vindicate[] the regular operation of its judicial system" and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory."  Juidice v. Vail, 430 U.S. 327, 336 n.12 (1977); see Watson v. Ordonez, 318 F. Supp. 3d 456, 460 (D. Mass. 2018), aff'd, 2020 WL 6788144 (1st

Cir. May 1, 2020) (noting Massachusetts' interest in avoiding federal court interference with orders of Probate and Family Court).  Further, Plaintiff has an adequate opportunity to vindicate her federal rights in the state proceeding by appealing the Family Court's orders in state court and raising her federal claims there.  The Court must presume the state court system is equipped to hear such claims.  See Bethoney v. Youngclaus, No. 19-cv-10777-LTS, 2019 WL 2085361, at *1 (D. Mass. May 13, 2019).

Third, none of the narrow exceptions to Younger apply here.  See Sirva Relocation, LLC, 794 F.3d at 192 (noting exceptions to Younger when "state proceeding is brought . . . for the purpose of harassment . . . if the state forum provides inadequate protection of federal rights [or] when a state statute is 'flagrantly and patently violative of express constitutional prohibitions'") (quoting Younger v. Harris, 401 U.S. 37, 53–54 (1971)).   Upon referral from the Family Court, the BBO filed its petition based upon the Family Court records before it (e.g., transcripts, filings, contempt orders), which proceedings Plaintiff repeatedly initiated herself, either through filings or non-compliance with court orders.  See D. 34-4.  Moreover, as to both proceedings, Plaintiff is free to raise federal constitutional challenges on appeal, and there is no allegation of a "flagrantly or patently" unconstitutional state statute.

Accordingly, the Court must abstain from interference into the ongoing BBO and Probate Court proceedings.

### 3.   *Sovereign Immunity*

Even if the Court had subject matter jurisdiction, which it does not, the State Defendants are also immune from the claims for brought against them in this case in federal court.  The "Eleventh Amendment bars federal suits by citizens against the state or state agencies . . . 'regardless of the nature of the relief sought,'" unless the State has consented to suit or Congress

has overridden the State's immunity.  O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000) (quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); Kentucky v. Graham, 473 U.S. 159, 167 (1985).  All State Defendants are sued here in their official capacity, which is the same as suing that official's state office or the state itself.  See D. 1 at 1; Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  The Commonwealth courts are arms of the state and, thus, entitled to sovereign immunity from suit in this Court.  See Whalen v. Mass. Trial Ct., 397 F.3d 19, 28–30 (1st Cir. 2005) (holding that state courts are entitled to Eleventh Amendment immunity).  So is the BBO.  Johnson, 324 F. Supp. 2d at 286 (concluding that because BBO was arm of the state, it was entitled to Eleventh Amendment immunity).

4.    *Judicial Immunity*

The Court Defendants have absolute immunity from Plaintiff's claims against them. "Absolute immunity from civil liability applies to any judicial officer for any normal and routine judicial act."  Becks v. Plymouth Cty. Superior Ct., 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (citing Stump v. Sparkman, 435 U.S. 349 (1978)) (noting that exception to absolute judicial immunity is when court acts in clear absence of its jurisdiction or outside judicial capacity). "[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether."  Zenon v. Guzman, 924 F.3d 611, 617 n.10 (1st Cir. 2019) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)).  Because the claims at issue here are based on actions judicial officers took in their official capacities, Court Defendants are entitled to absolute immunity.[2]

_____

[2] The Court does not reach whether Williams, who served as Court Administrator, also enjoys judicial immunity, see Bettencourt v. Bd. of Registration In Med. of Com. of Mass., 904 F.2d 772, 785 (1st Cir. 1990) (concluding that court staff members immune from suit when acting in legal or advisory capacity), because the complaint is devoid of any allegations as to Williams' conduct, which in itself warrants dismissal of claims against Williams.  See D. 1.  Similarly, the Court does not reach whether McKenzie enjoys quasi-judicial immunity as a court-appointed commissioner given the other bases for dismissal discussed above.

BBO Defendants also have quasi-judicial absolute immunity from Plaintiff's claims against them because "[s]tate officials performing prosecutorial functions—including their decisions to initiate administrative proceedings aimed at legal sanctions—are entitled to absolute immunity as well." Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 701 (1st Cir. 1995); see Johnson, 324 F. Supp. 2d at 287 (citing Wang, SJC Rule 4:01 § 7 and concluding that BBO counsel was absolutely immune because he "prosecute[s] all disciplinary proceedings before hearing committees, special hearing officer[s], the Board [of Bar Overseers], and [the Supreme Judicial Court]").

Accordingly, for all these reasons the Court does not have subject-matter jurisdiction over Plaintiff's claims and the motions to dismiss are ALLOWED.[3]

C.     **Injunctive Relief**

Given that the Court lacks subject-matter jurisdiction over Plaintiff's claims, it also lacks subject-matter jurisdiction to grant injunctive relief, and Plaintiff's motion for same, D. 64, is denied as moot. See Pine Env't Servs., LLC v. Carson, 43 F. Supp. 3d 71, 76 (D. Mass. 2014).

---

[3] As such, the Court does not address the other bases for dismissal asserted by Defendants.

## VI.     Conclusion

For all these reasons, the Court ALLOWS Defendants' motions to dismiss with prejudice,

D. 31, 33, 37, 51, and DENIES as moot Plaintiff's motion for injunctive relief, D. 64.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge